LISA A. RASMUSSEN, ESQ.
Nevada Bar No. 7491
**THE LAW OFFICES OF KRISTINA WILDEVELD & ASSOCIATES**
550 E. Charleston Blvd., Suite A
Las Vegas, NV 89104
Phone (702) 222-0007
Fax (702) 222-0001
Lisa@Veldlaw.com
*Counsel for The Law Offices of Kristina Wildeveld & Associates*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: <br><br> TRACY LEE HURST-CASTL, <br><br> Debtor. | Case No. 23-10410-mkn <br> Chapter 11 <br><br> **RESPONSE TO OBJECTION TO PROOF OF CLAIMS NO. 6 (Law Offices of Kristina Wildeveld & Associates)** <br><br> Hearing Date: June 14, 2023 <br> Hearing Time: 9:30 a.m. |

Comes now The Law Offices of Kristina Wildeveld & Associates ("Creditor") by and through Lisa A. Rasmussen, Esq., of The Law Offices of Kristina Wildeveld & Associates, and submits its Response to Objection to Proof of Claims No. 6 (Law Offices of Kristina Wildeveld & Associates), pursuant to LR 3007(b), LR 9014(d)(1) and (3), and based on the following points and authorities.

**POINTS AND AUTHORITIES**

I.    **STATEMENT OF THE FACTS**

On February 23, 2021, Creditor filed a Complaint in the Eighth Judicial District Court of the State of Nevada (state action) against Debtor, presenting causes of action for breach of contract, unjust enrichment, fraud and intentional misrepresentation. *See* Exhibit A. In a

nutshell, the complaint alleges that Debtor contracted with Creditor for legal representation, that Debtor would pay a retainer of $5,000.00, would pay standard hourly rates for Creditor's services, and would make monthly payments of at least $2,000.00 until fully satisfied. *Id*. at 3-6. The Complaint states that Creditor provided $67,000.00 in services, that Debtor paid $7,000.00 and then stopped. *Id*. The Complaint alleges that Debtor knowingly and intentionally entered into the contract with Creditor, *ab initio*, knowing that Debtor had no intention of paying Creditor in full. *Id*.

Debtor acknowledged receiving discovery in the state action, including Creditor's Invoices nos. 206, 234 and 252, which contained "detailed accounting of time and expenses relating to the damages herein." *See* Exhibit B at 5-6. Debtor also agreed that "[p]er the contractual agreement of the parties, [Creditor's] costs for representing [Debtor] in the PennyMac case totaled approximately $67,000, of which $60,00 remains due and owing." *Id*. at 6. Debtor also admitted that "[i]n addition to this unpaid balance, [Debtor] owe[s] agreed upon fees for months in which no payments were made." *Id*.

On April 4, 2022, Creditor moved for summary judgment in the state action. *See* Exhibit C. Among the exhibits supporting the motion was an email and attachment from Creditor to Debtor, explaining Creditor's rate of $600 per hour, and providing a detailed list of billing events between April 9, 2020, and September 25, 2020 within Invoice No. 206. *Id*. at Exhibit 6, Bates pp. 040-049.

Creditor supported its motion with a declaration which outlined how Creditor's representation of Debtor came about, including: Debtor wanted Creditor to represent her in three (3) different cases, but Creditor agreed to take only the PennyMac case; Creditor informed Debtor that the minimum costs to take the case to trial would be at least $50,000.00 to $60,000.00 and that a $50,000.00 retainer was necessary; Debtor stated she could not afford a

$50,000.00 retainer but promised to pay $5,000.00 up front, followed by $2,000.00 monthly payments; Creditor undertook substantial efforts to help Debtor locate potential medical malpractice counsel in California and did not charge Debtor for its services; Creditor obtained a continuance for Debtor and attempted to obtain another continuance, at Debtor's insistence; and when Creditor told Debtor it was necessary that she make payments, Debtor said she would and thanked Creditor. *Id*. at Bates pp. 002-006.

Opposing summary judgment in the state action, Debtor submitted a declaration which propounds the same allegations she presents through her instant declaration, albeit more succinctly. *See* Exhibit D at 8-10. In both declarations Debtor alleges that: Debtor initially consulted with Creditor over a malpractice case, which it agreed to take on a contingency basis; Creditor first quoted a 50K retainer for the PennyMac case but agreed to take the entire case for $5,000; someone altered the signed fee agreement; there was no agreement to make monthly payments; she was unaware of an hourly rate; Creditor's email of July 6, 2020, stated that all payments had been made; Creditor's failure to file a medical malpractice case within California's statute of limitations has prevented Creditor from bringing the action; and so forth. *See* and compare Exhibit D at 8-10 with Objection, Doc. 91 at 22-48.

The state district court denied summary judgment because the facts were contested, finding that Debtor had "set forth specific facts demonstrating the existence of a genuine issue of material fact that it is more appropriate for the trier of fact to determine at the time of trial." *See* Exhibit E at 2. Trial was set for June 27, 2022. *See* Exhibit F.

Debtor moved to continue the trial date to have surgery, which was granted. *See Id*. and Exhibit G. The trial date was reset for November 14, 2022, *see* Exhibit H, and again for December 5, 2022, *see* Exhibit I. Debtor did not have her surgery, but instead sought another continuance based upon a doctor's letter. *See* Exhibit J.

The state district court ordered an evidentiary hearing to allow Debtor to prove her inability to proceed to trial, *id*., but Debtor's doctor failed to appear, *see* Exhibit K. On January 5, 2023, the state district court reset the trial date for February 27, 2023, instructing Debtor that the trial would proceed on that date. *See* Exhibit K. Debtor dodged the trial by filing her notice of bankruptcy. *See* Exhibit L.

Creditor's Claim 6 is the exact same claim as the state claim which has been litigated to trial readiness in the state action. Exhibit A. It is this claim for which Creditor's Motion for Relief from Stay has been filed so that Creditor may avoid unnecessary costs of relitigating the matter via adversarial proceeding. *See* Doc. 22.

Although unrelated to Claim 6, Creditor has added much flourish to her instant Declaration about the alleged medical malpractice suit, announcing her intention to file a legal malpractice complaint against Creditor, accordingly. Objection, Doc. 91 at 22-24, 48. Notably, Debtor has not filed a legal malpractice claim and if she does, Creditor will defend the same accordingly and disputes all of Debtor's allegations in this regard.

Pursuant to LR 3007(b), written documentation in support of Claim No. 6 has already been provided to the objecting party and the documentation will be provided at any evidentiary hearing or trial on the matter.

## II.     LEGAL ARGUMENT IN RESPONSE

A proof of claim constitutes prima facie evidence of the validity and amount of the claim. *In re All-American Auxiliary Assoc.*, 95 B.R. 540, 544 (Bankr. S.D. Ohio 1989). "A properly-filed claim is deemed allowed unless a party in interest objects to the claim, and the objecting party bears the burden of proof that the claim should be disallowed." *In re Hillsborough Holdings Corp.*, 218 B.R. 617, 619 (Bankr. M.D. Fla. 1991). The validity of a claim is governed by state law. *In re Johnson*, 756 F.2d 738, 741 (9th Cir. 1985). A claim must

-4-

be allowed unless the Debtor can show that it is unenforceable under an agreement or applicable law. *Stuart v. City of Scottsdale*, 2021 Bankr. LEXIS 981 (9th Cir. BAP 2021)(citing 11 U.S.C. § 502(b)(1)).

A party objecting to a claim has the burden to "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claims themselves." *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991). If the objector succeeds in overcoming the prima facie effect of the proof of claim, the creditor must prove the validity of the claim by a preponderance of the evidence. *All-American Auxiliary*, 95 B.R at 544.

Where a proof of claim submits at least some evidence of the claim, however, the objecting party carries the burden of submitting evidence which rebuts the claims. *Cluff v. eCast Settlement*, 2006 U.S. Dist. LEXIS 71904 *13 (D. Utah 2006)(citing *In re Cluff*, 313 B.R. 323, 337-38 (Bankr. D. Utah 2004)). *See also In re Little*, 634 B.R. 784, 791 (Bankr. E.D. Ark. 2021) (where the proof of claim presents "some evidence" of the claim, the objector must come forward with "some evidence to meet, overcome, or at least equalize the statements on the proof of claim"). Only if the objector presents evidence supporting its objection, does "the ultimate burden of persuasion shift to the Claimant to establish its entitlement to relief." *Dove-Nation v. eCast Settlement Corp.*, 318 B.R. 147, 152 (8th Cir. BAP 2004).

Under Fed. R. Evid., Rule 201(b), judicial notice may be taken of documents filed in federal and state judicial proceedings. *Armin Dirk Van Damme v. Wells Fargo Bank, N.A.*, 2022 Bankr. LEXIS 3719 *5 (Bankr. D. Nev. 2023) (unpublished). *See also Cal. ex rel. RoNo, LLC v. Altus Fin. S.A.*, 344 F.3d 920, 931 n. 8 (9th Cir. 2003)(same). Orders issued by state courts on matters which are relevant to objections presented in Bankruptcy Court may be considered in the resolution of such objections. *Glastonbury Landowners Ass'n v. O'Connell*, 2020 U.S. Dist. LEXIS 174800 *8 (D. Montana September 23, 2020).

### 1. Debtor Has Failed To Identify Any Reason Why Claim 6 Would Not Be Allowed Under an Agreement or State Law.

Debtor's objection and its four (4) included "problems" fail to assert that any agreement or state law renders Claim 6 unenforceable. § 502(b)(1). In fact, Debtor omits to mention that as a state claim, Claim 6 has already proceeded through the State district court where it now awaits trial. Although Debtor was able to avoid summary judgment by submitting facts which contradict those of the Creditor, Debtor failed to obtain a dismissal of the claim under any procedural or substantive principle of Nevada law. The state district court has found no such reason, and Debtor has alleged none.

Breach of contract, unjust enrichment, fraud and intentional misrepresentation constitute clear and cognizable causes of action under Nevada law. *See* Exhibit A at 6, 7, 8 and 10. Because Debtor has failed to establish that Claim 6 is unenforceable under an agreement or Nevada law, her objection must be overruled. *In re Johnson*, 756 F.2d at 741.

### 2. Debtor's Problem No. 1 Incorrectly Asserts That Claim 6 Lacks Evidence to Support the Claimed Amount of $61,598.58.

Debtor asserts that the itemized statement supporting Proof of Claim 6 "includes amounts totaling $8,422.70. However, POC 6 is claiming $61,598.58 with evidence that these amounts exist." Objection, Doc. 91 at 6. Assuming Debtor intended to state "*no* evidence," she is simply wrong:

Proof of Claim 6 includes Creditor's Invoice No. 234, which provides both an itemized billing for the period of September 30, 2020 through December 30, 2020, as well as sections entitled "Open Invoices and Credits" and "Remittance Copies" ("Balance Sections"). *See* Objection, Doc. 91 at 5-9.

Addressing unpaid balances from previous invoices, the Balance Sections indicate an unpaid balance of $58,575.88 from previous Invoice No. 206. *Id*. at 8-9. The Balance Sections then compile the total balance due by adding the balance of all outstanding invoices minus payments which have been made. *Id*. Adding the owed balances of Invoice Nos. 206 ($58,575.88) and 234 ($8,422.70), minus credits for three (3) payments submitted by Debtor ($7,000.00), Invoice No. 234 shows a total balance due of $59,998.58. *Id.*

Debtor's argument that there is no evidence within Invoice No. 234 supporting the unpaid amount of $58,575.88 is simply false. If it *were* true, then Invoice No. 234 would also provide no evidence that Debtor made three (3) payments totaling $7,000.00, yet Debtor argues vehemently that these payments were made. The numbers within the Balance Sections are either evidence or they are not, and Debtor cannot have her cake and eat it to by claiming some numbers count and others do not.

While the inclusion of Invoice No. 206 would have provided itemization of previous billings, the Balance Sections of Invoice No. 234 constitutes evidence that previous billing under Invoice No. 206 balanced $58,575.88. Debtor has *not* alleged that this evidence is insufficient. She has simply alleged, most incorrectly, that it is not evidence.

Debtor's argument feigns that she has not already received Invoice No. 206 during the course of litigation in the state action, yet admits that "invoices 196, 206 & 234 [ ] were provided to me from [Creditor]" in 2020 and 2021. *See* Objection, Doc. 91 at 35. Debtor can scarcely be heard to complain about not receiving evidence where she admits she has received it multiple times over the years.

While by no means conceding that Creditor failed to provide evidence supporting Proof of Claim 6, out of an abundance of caution and as a courtesy to the Court, Creditor has attached to this response pertinent documents filed in the state district court, including Debtor's

acknowledgement of receipt of Invoice No. 206 via discovery disclosures and as an exhibit to Creditor's motion for summary judgment. *See* Exhibit B at 5-6; Exhibit C at Bates pp. 040-049. The Court is requested to take notice of Exhibits A through L in support of this response.

### 3. Debtor's Problem No. 1 Asserts a Lack of Evidence While Failing to Present Any Evidence To Meet, Overcome or At Least Equalize the Claim.

Debtor objects to the evidentiary basis of Claim 6 but has failed to "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claims themselves." *In re Holm*, 931 F.2d at 623. Debtor's declaration clearly attempts to place many things in dispute, but notably fails to contest the number of hours and the value of time and resources which Creditor expended in representing her. *See* Objection, Doc. 91 at 22-48. In claiming that Creditor agreed to do everything for $5,000.00, there may be wisdom in Debtor's decision to avoid the issue.

Because the Debtor has failed to present any evidence supporting its objection on the number of hours which Creditor expended in representing her, Debtor has failed to shift the burden to Creditor to establish its entitlement to relief and the objection should be overruled. *Dove-Nation,* 318 B.R. at 152.

### 4. Debtor's Problem No. 2 Fails to State Any Legal Error

The exception within § 502(b)(1) exists where a claim is unenforceable against a debtor "under any agreement or applicable law." *Travelers Cas. and Sur. Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 449-50 (2007). Debtor asserts that the retainer agreement is not a valid retainer for Creditor's services because it is a "criminal retainer." The basis of the objection is not entirely clear, as Debtor complains on the one hand that the contract is "criminal" while acknowledging it to be a "generic document/fee agreement" on the other. Objection, Doc. 91 at 34. Debtor provides no explanation of the actual "problem" here.

Debtor does *not* assert that the retainer or any other agreement precludes the filing of Claim 6. Nor does Debtor reference any state law which invalidates the contract for being on a "criminal retainer" form, whatever that may mean. Debtor is simply unhappy that the agreement form she signed can be used for both civil and criminal matters.

Nevada law recognizes an enforceable contract as one which includes an offer and acceptance, a meeting of the minds, and consideration. *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). Debtor has failed to cite any Nevada law which expands *May*'s standard to include format regulations. The objection should be overruled.

**5. Debtor's Problem No. 3 Is Belied and Repelled By Proof of Claim 6 and Debtor's Own Documentation Submitted in Support of Its Objection.**

Debtor objects on the basis that "[t]he $600.00 per hour fee the Creditor bills has no support in either a retainer or documentation." Objection, Doc. 91 at 6. This ostensible challenge to sufficiency of evidence is belied and repelled by Debtor's own exhibits in support of her objection:

The retainer agreed that Debtor would be charged at standard office hourly rates, Objection, Doc. 91 at 20, which is stated 19 times within Invoice No. 234 to be $600.00, *id.* at 15-16. Debtor admits within her Declaration that an invoice entry for September 2, 2020, notified her of the $600.00 hourly rate, *id.* at 30; that Creditor's office twice clarified with Debtor that the rate was $600.00 per hour, *id.* at 32-34; that she received Invoices nos. 196, 206 and 234 from Creditor in 2020 and 2021, *id.* at 35, and that attorney Lisa Rasmussen informed her of the $600.00 rate in an email dated October 26, 2020, *id.* at 36.

In the state court action Debtor stipulated to her receipt of Invoices nos. 206, 234 and 252, *see* Exhibit B at 5, and was again provided Invoice no. 206 as a summary judgment exhibit, *see* Exhibit C at Bates 043-049. Debtor's contention that no documentation supports the

$600.00 hourly rate is repelled by the numerous emails and invoices of which Debtor, herself, admits to having received since 2020 in the course of business, during the state court action and within this bankruptcy proceeding.

All of this is, incidentally, contrary to (1) Debtor's alternating and unsubstantiated claims that she thought she was only paying $5,000.00, or $7,000.00, or whatever her non-cogent theory is on any given day, and (2) Debtor's response to Creditor's payment requests that she was unable to pay at the moment, was seeking a solution, and would do so "when I find a remedy and able. Thank you for your patience and concern." *See* Exhibit C at 063, 065 and 067. Nothing in this response evinces shock and disagreement over unjustified billing. The response shows Debtor's clear acknowledgment of her debt.

**6. Debtor's Problem No. 4 Is Redundant of Problem No. 3 and Is a Factual Matter to Be Determined By a Jury.**

Debtor's final "problem" is that she was "not aware of the number of charges and the hourly charge of $600.00 until after conclusion of the purported civil matter." Objection, Doc. 91 at 6. This objection is essentially a regurgitation of Debtor's Problem No. 3, as the essence of both is that Debtor was unaware of Creditor's charges until some unspecified time after they were incurred. To that extent, Creditor incorporates its response to Problem No. 3 as if set forth herein.

Debtor's naked assertion that she did not know about the billing rates does not "produce evidence and show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claims themselves." *In re Holm*, 931 F.2d at 623. This is especially applicable where, as here, Debtor's own Declaration concedes that she was notified of the billing rates and received invoices which set forth the charges in 2020 and 2021. At best, these contested factual matters are "more appropriate for the trier of fact to determine at the time of

trial," Exhibit E at 2; however, they fail to render the claim unenforceable "under any agreement or applicable law." *Travelers Cas. and Sur. Co. of America*, 549 U.S. at 449-50.

### 7. Debtor's Allegations of Legal Malpractice are Wholly Irrelevant to These Proceedings and Are Baseless as a Matter of Law.

Debtor brings into her objection the tale of a medical malpractice action which was lost by Creditor's failure to file a timely complaint in California, ostensibly in violation of Creditor's contractual agreement to do so. *See* Objection, Doc. 91 at 22-24. Debtor memorializes her intent to file a legal malpractice complaint against Creditor because of this malpractice. *Id* at 48 (referencing Doc. 43 at 5 ("Malpractise (sic) claim against law firm of Weldeveld (sic) & Accociates (sic) for attorney malpractise (sic) in handling a medical malpractise (sic) claim. Allowed SOL on Medical Mal Proactise (sic) to expire.")).

In addition to having absolutely no relevance to Claim 6, Debtor's allegation that Creditor failed to file a medical malpractice suit which it agreed to pursue is wholly erroneous, is fictitious, and has no basis under Nevada law.

First, Debtor fails to attach a copy of the medical malpractice agreement she allegedly entered with Creditor, and for good reason: one never existed. *See* Exhibit D at 8-10; and Objection, Doc. 91 at 22-48 (Debtor declines to declare under penalty of perjury that she and Creditor entered a signed agreement for a medical malpractice case because one was not signed). Because there was no agreement to pursue a medical malpractice case in the first instance, there is no basis for a legal malpractice suit against Creditor for not pursuing one on Debtor's behalf.

Second, Debtor has failed to cite any Nevada law which would render Claim 6 (the PennyMac representation) unenforceable by virtue of a claim that Creditor failed to pursue a separate matter altogether. Debtor has failed to demonstrate the existence of a causal nexus

between her violation of the contract with Creditor in the PennyMac case and the free help which Creditor provided her in trying to obtain medical malpractice counsel in California. The matters are wholly distinguishable and lack any relationship to support an objection here.

## CONCLUSION

Creditor's Proof of Claim No. 6 is a valid, allowable claim in these proceedings. Debtor's "objections" serve only to support the state court's conclusion that a trial is necessary on the facts and fail altogether to demonstrate that an agreement or state law precludes the Claim. Even had Creditor presented a *de minimis* showing of unenforceability under § 502(b), Creditor's contradictory declarations would nevertheless fail to meet her obligations of equalizing the evidence and of placing the burden of proof on Creditor – a burden of proof which Creditor has nonetheless met.

For these reasons the Court should overrule Debtor's objections to Creditor's Proof of Claim 6.

Dated May 23, 2023.

                                                **THE LAW OFFICES OF KRISTINA WILDEVELD & ASSOCIATES**

                                                */s/ Lisa A. Rasmussen*
LISA A. RASMUSSEN
Nevada Bar No. 7491
550 E. Charleston Blvd., Ste. A
Las Vegas, NV 89104
(702)222-0007
(702)222-0001 (fax)
Lisa@Veldlaw.com

Counsel for The Law Offices of Kristina Wildeveld & Associates

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent on May 23, 2023, to the following via the Court's ECF:

Office of the United States Trustee
Attn: Justin C. Valencia
300 Las Vegas Blvd. South, Suite 4300
Las Vegas, NN 89101
Email: justin.c.valencia@usdoj.gov
Attorney for United States Trustee

Steven L. Yarmy
7464 W. Sahara Avenue
Las Vegas, NV 89117
Email: sly@stevenyarmylaw.com
Attorney for Debtor

Michael W. Chen on behalf of Creditor DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE, IN TRUST FOR REGISTERED HOLDERS OF LONG BEACH MORTGAGE LOAN TRUST 2006-6, ASSET-BACKED CERTIFICATES, SERIES 200606 bknotice@mccarthyholthus.com, chen@ecf.courtdrive.com; nvbkcourt@mccarthyholthus.com; mchen@mccarthyholthus.com

Brian D. Shapiro
brian@trusteeshapiro.com
nv22@ecfcbis.com; kristen@trusteeshapiro.com; carolyn@brianshapirolaw.com

U.S. Trustee – LV 11
USTPRegion17.lv.ecf@usdoj.gov

        **THE LAW OFFICES OF KRISTINA WILDEVELD & ASSOCIATES**

        */s/ Lisa A. Rasmussen*
        LISA A. RASMUSSEN
        Nevada Bar No. 7491
        550 E. Charleston Blvd., Ste. A
        Las Vegas, NV 89104
        (702)222-0007
        (702)222-0001 (fax)
        Lisa@Veldlaw.com

        Counsel for The Law Offices of Kristina Wildeveld & Associates